NO. 3067

Under the terms and provisions of Article 5764a, Vernon's Texas Statutes, 1938 Supplement (otherwise known as the Texas Citrus Marketing Act, House Bill No. 654, Acts 1937, 45th Legislature), the State of Texas is without the power or authority to control the movement of citrus fruit shipped interstate, or to control and regulate citrus fruit going into interstate commerce.

## OFFICE OF THE ATTORNEY GENERAL

June 29, 1939

Honorable J. E. McDonald,
Commissioner of Agriculture,
Austin, Texas.

Dear Mr. McDonald:

> Opinion No. 0-946
> Re: Can the State, under H. B. 654, control and regulate the citrus fruit going into interstate commerce as well as that going into intrastate commerce?

We are in receipt of your letter of June 5, 1939, in which you asked the following question:

"... whether or not under the State Enabling Act, heretofore referred to (Texas Citrus Marketing Act, Acts 1937, 45th Legislature, H. B. No.654, Ch. 362, p. 724, Art. 5764a, Vernon's Texas Statutes, 1938 Supplement), and the Marketing Agreement existing thereunder, the movement of the citrus fruit shipped interstate can be brought under control and made amendable to the State Marketing Act, or in other words, can the State under this Act control and regulate the citrus fruit going into interstate commerce as well as that going into intrastate commerce?" (Parenthetical insertion ours)

The question relates specifically to the power of the State, through and by its duly elected and qualified Commissioner of Agriculture, to control and regulate "citrus fruit shipped interstate," and/or "citrus fruit going into interstate commerce," under the terms and provisions of Article 5764a, Texas Citrus Marketing Act.

Although it is our opinion that the language of Article 5764a is determinative of the question, we wish to call attention to Article I, Section 8, Clause 3, of the Constitution of the United States, which provides that Congress shall have the power:

"To regulate commerce with foreign nations, and among the several states, or with the Indian tribes."

Countless times the Supreme Court of the United States has held that the United States Congress has the exclusive power, under the Constitution, to regulate commerce between two or more states. U. S. vs. Railroad Bridge Co., 6 McLean (U. S.) 517, 27 Fed. Cas. 16, 114.

But although the jurisdiction of Congress over commerce among the states is full and complete, it is not questioned that Congress has no authority over commerce which is wholly within the state, and therefore none over combinations or agreements so far as they relate to a restraint of such trade of commerce. Addyston Pipe, etc. Co. vs. U. S. (1899) 175 U.S. 247, 20 Sup. Ct. 96, 44 L. Ed. 136.

It is elementary law that, even in the absence of the Texas Citrus Marketing Act, the State would be without power to control or regulate "citrus fruit shipped interstate," to use the language of the request.

As for "citrus fruit going into interstate commerce," assuming that this means citrus fruit destined for the channels of interstate commerce, but fruit which has not as yet commenced interstate journey, there might be some question, were it not for the restrictive language of the Texas Citrus Marketing Act, namely Article 5764a, supra, beyond which we do not have to go in answering your question.

Section 3 of Article 5764a reads as follows:

"Subject to the provisions of this Act, the Commissioner is hereby authorized and empowered to execute marketing agreemènts and to issue licenses under this Act to persons engaged in transactions of intrastate commerce within the areas of this State in the marketing, processing, packing, shipping, handling or distributing of citrus fruits." (Underscoring ours)

The exclusion by the Act from its coverage of interstate or foreign commerce or any control or regulation which would directly burden, obstruct, or affect interstate or foreign commerce in citrus fruits is brought out clearly in Section 7 of the Act which we quote in full, underscoring important portions:

"Marketing agreements executed and licenses issued pursuant to this Act shall contain one or more of the following terms and conditions and no others, except as provided in Section 6 of this Act:

"(1) Limiting, or providing methods for the limitation of the total quantity of any variety of citrus fruit, or of any grade, size or quality thereof, produced during any specified period or periods, which may be marketed in, or transported to, any or all markets in intrastate commerce.

"(2) Allotting, or providing methods for allotting, the amount of citrus fruits, or any grade, variety, size or quality thereof, which each handler may market in or transport to any or all markets other than in the current of interstate or foreign commerce or so as directly to burden, obstruct, or affect interstate or foreign commerce in such citrus fruits, under a uniform rule based upon (1) the amounts of such citrus fruits, or any grade, variety, size or quality thereof, which each such handler has available for current shipment, or (2) upon the amounts shipped by each such handler in such prior period as the Commissioner determines to be representative, or both, to the end that the total quantity of such citrus fruits, or any grade, variety, size or quality thereof, to be marketed in, or transported to any or all markets, other than in the current of interstate or foreign commerce, or so as directly to burden, obstruct, or affect interstate or foreign commerce in such citrus fruits, during any specified period or periods, shall be equitably apportioned among all of the handlers thereof.

"(3) Determining, or providing methods for determining, the existence and extent of the surplus of such citrus fruits, or of any grade, variety, size, or quality thereof, and providing for the control and dispostion of such surplus but so as not to burden or obstruct interstate of foreign commerce in such citrus fruits and for equalizing the burden of such surplus elimination or control among the producers and handlers thereof." (Underscoring ours)

Since Article 5764a, by its own language, is definitely restricted to cover "intrastate commerce," it is important to consider the Act's definition, which is as follows:

"'Intrastate commerce,' as used in this Act, means all commerce other than that which is in the current of interstate or foreign commerce, or which directly burdens, affects or obstructs interstate or foreign commerce."

It is our opinion that it was the legislative intent to authorize the Commissioner of Agriculture to enter into marketing agreements with parties and to issue licenses only in relation to their intrastate business in citrus fruit. The term "transactions of intrastate commerce within the areas of this State," as used in Section 3, is conclusive. Under the Act, the Commissioner of Agriculture is prohibited from entering into marketing agreements which have as their subject matter the marketing, processing, packing, shipping, handling or distributing of "citrus fruit shipped interstate," and/or "citrus fruit going into interstate commerce."

The Act has been so construed by the courts of this State. McDonald, et al, vs. American Fruit Growers, Inc., et al, 126 S. W. (2d) 83 (Petition for writ of error denied).

We quote from the above-mentioned opinion:

"In the second place, the Act provides in effect that the Commissioner is not to place any limitation on the quantity of citrus fruit to be transported in interstate or foreign commerce. The commissioner could be justified in fixing a minimum price only on the theory that it would limit the quantity of citrus fruit to be transported in intrastate commerce and if it would have that effect on intrastate commerce by the same token it would limit the quantity of citrus fruit to be transported in interstate and foreign commerce, a thing which the Act itself says he should not do."

First, because of the provisions of the Federal Constitution granting exclusive power over interstate commerce to the United States Congress; second, because of the unambiguous restrictive language of the Texas Citrus Marketing Act, Article 5764a; and thirdly, because the courts have construed the Act to say that the Commission has no power to limit the quantity of citrus fruit to be transported in interstate and foreign commerce, we hold that under the Texas Citrus Marketing Act, the movement of citrus fruit shipped interstate cannot be brought under control, and that the State, under said Act, cannot control and regulate the citrus fruit going into interstate commerce.

It has been called to our attention that over seventy-five per cent of the citrus fruit produced in the citrus area, consisting of Hidalgo, Cameron, and Willacy Counties, is shipped interstate. Under the Texas Citrus Marketing Act, Article 5764a, the Commissioner of Agriculture is without authority to enter into marketing agreements concerning this fruit. We wish to point out, however, that we are not passing upon the question of whether or not the Legislature, in the valid exercise of its police power, might enact laws applicable to this fruit before it enters into the channels of commerce.

In Article 5764a the distinction between interstate and intrastate commerce is so emphasized and repeatedly stated as to leave no doubt that the marketing agreements and licenses provided for therein should be strictly limited to transactions basically intrastate in nature and transactions which would not directly burden, obstruct or affect interstate commerce. The Act does not appertain to citrus fruit on the tree or in the orchard disassociated from either interstate or intrastate commerce.

While we have examined the marketing agreement entered into pursuant to the Act, on October 11, 1937, we deem it unnecessary to discuss it further here. It applies to "transactions of intrastate commerce within the areas" of the State of Texas. The same definition of "intrastate commerce" as occurs in the Act is to be found in Article 1, section 1, subsection 9 of the agreement.

Trusting that the above fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By (signed) Dick Stout
Assistant

DS:pbp

This opinion has been considered in conference, approved, and ordered recorded.

GERALD C. MANN
ATTORNEY GENERAL OF TEXAS